UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

---

GOOSEHEAD INSURANCE
AGENCY, LLC.,

          Plaintiff,

    v.                                                    Case No. 4:19-cv-01040

WILLIAMS INSURANCE AND
CONSULTING, INC., TRISHA M.
WILLIAMS and JOSEPH N.
WILLIAMS,

          Defendants.

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR
TRANSFER THE COMPLAINT**

---

## Table of Contents

INTRODUCTION ......................................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENT .............................................................................................................5

    I.     UNDER <u>ATLANTIC MARINE</u>, THE 28 U.S.C. § 1404 PUBLIC
          INTEREST FACTORS DO NOT WARRANT A TRANSFER OF
          THIS DISPUTE TO THE EASTERN DISTRICT OF MICHIGAN................5

          A.    The Forum Selection Clause Requires Consideration Of
                  Public Interest Concerns—Private Concerns Are Irrelevant ................6

          B.    The Public Interest Factors Do Not Outweigh The Interest
                  In Enforcing The Forum Selection Clause..............................................7

          C.    WIC Did Not Present Evidence Relevant To The Private
                  Interest Factors ........................................................................................9

          D.    The Michigan Franchise Investment Law ("MFIL") Does Not
                  Override The Supreme Court's Direction In <u>Atlantic Marine</u> .............10

    II.    THE FIRST-TO-FILE RULE DOES NOT OVERRIDE THE
          AGREEMENT'S FORUM SELECTION CLAUSE.......................................14

    III.    THE FORUM-SELECTION CLAUSE PROPERLY ESTABLISHES
          VENUE UNDER 28 U.S.C. § 1391 ...............................................................15

    IV.    WIC WAIVED ANY CHALLENGE TO PERSONAL JURISDICTION
          IN THIS DISTRICT .......................................................................................17

    V.    THE AGREEMENT'S CHOICE OF LAW CLAUSE PROVIDES
          NO BASIS FOR THE COURT TO DISMISS OR TRANSFER
          THIS DISPUTE .............................................................................................19

          A.    Only The Forum-Selection Clause—Not The Choice Of Law
                  Clause—Provides A Basis For The Court to Dismiss Or Transfer
                  This Matter ............................................................................................19

          B.    The Parties' Choice Of Law Clause Excludes Conflict Of Laws
                  Principles...............................................................................................19

          C.    The Choice Of Law Clause Passes Muster Under The Traditional
                  Texas Conflict Of Law Rules .............................................................20

CONCLUSION.........................................................................................................23

# **Table of Authorities**

**Page(s)**

**Cases**

Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. Texas,
571 U.S. 49 (2013) ................................................................................2, 5–15, 21

Auto Wax Co., Inc. v. Weaver, 1998 WL 892312 (N.D. Tex. 1998) ......................................15

Automated Solutions, Inc. v. Fadal Machining Centers, LLC, 2011 WL 2182457
(D. Idaho 2011) ......................................................................................................15

Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357 (6th Cir. 1993) ................................21

Blue Racer Midstream, LLC v. Kelchner, Inc., 2018 WL 992781 (N.D. Tex. 2018) .............11

Buist v. Digital Message Systems Corp., 2002 WL 31957703 (Mich. App. 2002) ................14

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) .........................................................17, 18

Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599 (5th Cir. 1999) ................................14

Cardoni v. Prosperity Bank, 805 F.3d 573 (5th Cir. 2015) ....................................................21

Caribbean Restaurants, LLC v. Burger King Corp., 23 F. Supp. 3d 70 (D.P.R. 2014) ..........11

City of New Orleans v. Municipal Administrative Services, Inc., 376 F.3d 501
(5th Cir. 2004) ........................................................................................................16

Corizon Health, Inc. v. CorrecTek Inc., 2017 WL 3091456 (D. Idaho 2017) ........................12

ECL Group v. Mass., 2018 WL 949235 (N.D. Tex. 2018) ....................................................21, 22

Family Wireless #1, LLC v. Automotive Technologies, Inc.,
2015 WL 5142350 (E.D. 2015) ..............................................................................14

Fargo Bank, N.A. v. West Coast Life Insurance Co., 631 F. Supp.2d 844
(N.D. Tex. 2009) .....................................................................................................14

Haynsworth v. The Corporation, 121 F.3d 965 (5th Cir. 1997) ...............................................6

Huawei Technologies Co., Ltd. v. Yiren Huang, 2019 WL 1978339 (E.D. Tex. 2019) .........20

Hunt v. Bankers Trust Co., 799 F.2d 1060 (5th Cir, 1986) ....................................................16

Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982) ...............17

Kessler v. Direct Consulting Assocs. LLC, 2018 WL 7890862
(E.D. Mich. 2018) ......................................................................................................................13

Live Cryo, LLC v. CryoUSA Import & Sales, LLC, 2017 WL 4098853
(E.D. Mich. 2017) ......................................................................................................................13

Martino v. Cottman Transmission Sys., Inc., 218 Mich. App. 54 (1996) .............................14

McGee v. International Life Ins. Co., 355 U.S. 220 (1957) ....................................................18

McKissock, LLC v. Martin, 267 F. Supp.3d 841 (W.D. Tex. 2016).......................................21

Megadance USA Corp. v. Knipp, 623 F.Supp.2d 146 (D. Mass 2009)...................................15

Mink v. AAAA Development, LLC, 190 F.3d 333 (5th Cir. 1999) .........................................18

Piper Aircraft Co. v. Reyno, 454 U.S. 241 (1981)....................................................................7, 9

QR Spex, Inc. v. Motorola, Inc., 507 F. Supp.2d 650 (E.D. Tex. 2007) ..................................9

Smith v. EMC Corp., 393 F.3d 590 (5th Cir. 2004) ................................................................20

Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988)...............................................7

Travelers Health Association v. Virginia, 339 U.S. 643 (1950)..............................................18

Universal Operations Risk Management, LLC v. Global Rescue LLC,
2012 WL 2792444 (N.D. Cal. 2012) ....................................................................................14, 15

Western-Southern Life Assurances Co. v. Kaleh, 193 F. Supp.3d 756
(S.D. Tex. 2016)........................................................................................................................20

Wong v. PartyGaming Ltd., 589 F.3d 821 (6th Cir. 2009).....................................................12

Z-Tel Communications, Inc. v. SBC Communications, Inc., 331 F. Supp.2d 567
(E.D. Tex. 2004) .........................................................................................................................8

Zurich American Ins. CO. v. Tejas Concrete & Materials Inc., 982 F. Supp.2d 714,
 (W.D. Tex. 2013) ......................................................................................................................16

**Other Authorities**

28 U.S.C. § 1404(a) ..........................................................................................5, 6, 7, 8, 12

28 U.S.C. § 1391(b)(2) ...........................................................................................................16

Idaho Code § 29–110(1) ........................................................................................................13

Mich. Comp. Laws. § 445.1527(f)..........................................................................................10

Section 187(2) of the Restatement (Second) of Conflict of Laws ...........................................20

V.T.C.A. § 17.042(2) .............................................................................................................17

## INTRODUCTION

The Court should deny the Defendants' (together, "WIC") Motion to Dismiss by enforcing their contract with the Plaintiff ("Goosehead"), wherein they bought a franchise and plainly promised to litigate any and all disputes with Goosehead, their franchisor, in this very Court.  WIC and its original owners, Joseph and Trisha Williams ("Joseph" and "Trisha"), materially breached that contract by unlawfully competing against Goosehead, and Trisha continues to wrongfully associate herself with Goosehead by using its name and marks.  As a company that has always been located in Texas, Goosehead has every right to expect that this Court will hear its claims and, if appropriate, award compensation for its injuries.

As clearly provided in the Goosehead Insurance Agency, LLC Franchise Agreement (the "Agreement"), the parties agreed in Section 27.2 that any action by WIC could "be brought only within the state and judicial district in which [Goosehead maintains its] principal place of business."  That place is Texas.  The parties' Agreement eliminates any doubt regarding jurisdiction and venue, as the parties further stipulated each had decided to "waive all questions of personal jurisdiction or venue."  Furthermore, the parties stipulated to an unambiguous clause requiring the resolution of all disputes under the laws of Texas.

Ignoring the clear, unambiguous and mandatory forum selection clause, WIC asks the Court to dismiss this matter or, alternatively, transfer it to the United States District Court for the Eastern District of Michigan.[1]  WIC alleges in the Michigan Action that Goosehead is liable for breaching the very Agreement containing the forum selection clause.  As such, WIC has already

---

[1] WIC filed a preemptive suit in Michigan, Williams Insurance and Consulting, Inc. v. Goosehead Insurance Agency, LLC, Case No. 2:19-cv-13706-RHC-MJH (the "Michigan Action"), where Goosehead, the natural plaintiff, injured by WIC and its owners, is the putative Defendant.  Goosehead's motion to dismiss the Michigan Action is currently pending and will be fully briefed by January 27, 2020.  (Declaration of Zachary Eastburn, filed contemporaneously herewith as **Exhibit A**, at ¶ 2).

conceded that the Agreement is a valid, binding and enforceable contract—and that ought to include the clauses addressing forum, venue and jurisdiction.

In this District Court action, premised on diversity, and focused on the parties' forum selection clause, WIC has failed to address the single most important and controlling decision by the United States Supreme Court:  Atlantic Marine Construction Co. v. U.S. District Court, 571 U.S. 49 (2015).  The Supreme Court held in Atlantic Marine that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases."  Id. at 62.  There is nothing exceptional about this dispute and certainly nothing that should give the Court pause to enforce the Agreement's forum selection clause.

The pending motion essentially boils down to a single argument: that WIC might be entitled to protection under the Michigan Franchise Investment Law ("MFIL") and the MFIL purportedly voids forum-selection (though not choice of law) clauses.  The Court should not be persuaded.  As multiple courts have consistently held, the existence of a statute that appears to invalidate forum-selection clauses does not override the mandate issued by the Supreme Court in Atlantic Marine.

The remaining arguments raised by WIC are of little consequence.  Personal jurisdiction and venue were both conceded by WIC in the Agreement, apart from the fact that both otherwise clearly exist in the Northern District of Texas. The Court should deny this motion and hold the parties to their bargain, which provides for resolving all of their disputes in this District.

## STATEMENT OF FACTS

Goosehead is a Texas company with headquarters in Westlake, Texas.  (ECF No. 1, "Compl.", at ¶ 1).  From its Texas office, Goosehead offers third-party franchisees the opportunity

to sell home, automobile, life and commercial insurance to clients through Goosehead's valuable proprietary system, name and marks.  (Id. at ¶ 12).

Joseph and Trisha traveled to Westlake, Texas, on May 24, 2018. (Declaration of Ryan Langston at ¶ 4, filed contemporaneously herewith as **Exhibit B**).  The sole purpose of their visit was to attend and participate in the "Discovery Day" sponsored by Goosehead.  (Id.).  The Williamses met with Goosehead representatives to learn about the opportunity to purchase a franchise.  (Id.).  This Discovery Day experience was critical in Goosehead's decision of whether to engage Joseph and Trisha in a ten-year franchise relationship.  (Id. at ¶ 5).  Goosehead would not have approved Joseph and Trisha to purchase a franchise until they personally attended Discovery Day in Texas.  (Id.).

Trisha signed the Agreement a day after completing Discovery Day.  (Id. at ¶ 6). Joseph signed three days later.  (Id.).  Importantly, prior to signing the Agreement, Joseph misrepresented to Goosehead—while he was in Texas—that another one of his companies, JNW Consulting, LLC ("JNW"), would not compete with Goosehead.  (Id. at ¶ 7).  Joseph asserted that he would limit JNW to offering products not offered by Goosehead: health insurance policies covering expenses for healthcare claims not reimbursed through Medicare.  (Id.).  Based on the false promise that Joseph and JNW would not compete, Goosehead sold a franchise to Joseph and Trisha while they were in Texas.  (Id.; see also Compl. at ¶ 29).

The Agreement signed by Joseph and Trisha, as equal owners of WIC at the time, contains an unambiguous and mandatory forum selection clause that reads, in pertinent part:

> Choice of Venue.  Subject to Section 27.3 below, the parties agree that any action that you bring against us, in any court, whether federal or state, must be brought only within the state and judicial district in which we [Goosehead] maintain our principal place of business.  Any action that we bring against you in any court, whether federal or state, may be brought within the state and judicial district in which we maintain our principal place of business.

(ECF No. 1-1, the "Agreement", at ¶ 27.2, emphasis added).  In the same Agreement, the parties further agreed in Section 27.2.2 that:

> The parties hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.

(Agreement at ¶ 27.2.2).

In addition to agreeing to Texas as the forum for their disputes, WIC and Goosehead likewise stipulated that Texas law would govern the outcome of any claims.  Section 27.1 of the Agreement reads: "this Agreement will be interpreted and construed exclusively under the laws of the State of Texas which laws will prevail in the event of any conflict of law (without regard to, and without giving effect to, the application of Texas choice-of-law rules)."  (Agreement at ¶ 27.1). At no time did either Joseph or Trisha ask about, comment on, attempt to renegotiate, or complain about any Agreement provision, much less its forum, venue, jurisdiction and choice of law clauses. (Langston Decl. at ¶ 8).

After signing the Agreement, Joseph and Trisha returned to Texas, this time bringing three additional WIC employees.  (Id. at ¶ 9).  All five stayed in Texas for nearly two weeks, from June 11 until June 22, 2018, to attend Goosehead's initial management training program.  (Id.).    All five of WIC's principals and employees remained in Texas while attending their training.  (Id.). Completion of the initial management training program—in Texas—was mandatory.  (Id. at ¶ 10– 11).  Goosehead would not have permitted the Williamses to open their franchise prior to their successful completion of Goosehead's initial training program in Texas.  (Id.).

Critically, near the end of the management training program, Joseph, Trisha and their three employees began operating their franchised business from Westlake, Texas.  (Id. at ¶ 12).  They made telephone calls, sent e-mail messages, solicited potential customers, and generally operated

their franchise while physically present at Goosehead's headquarters in Texas.  (Id.). As a group, they sold thirty insurance policies from Texas. (Id.)

Unfortunately for Goosehead, WIC had not operated its franchise for a full year before Joseph and Trisha began competing with Goosehead, contrary to their Agreement obligations. (Compl. at ¶¶ 29–31).  Not long after becoming a franchisee, Joseph (once again making false promises to Goosehead) induced Goosehead to approve the transfer of his interest in WIC to Trisha.  (Id.).  Weeks later, Joseph transferred all of his interest in JNW to Trisha as well.  (Compl. at ¶ 31).  This was all done to compete with Goosehead, contrary to Defendants' Agreement obligations.

In August 2019, Goosehead discovered the efforts of both Joseph and Trisha to seek appointments to sell property and casualty insurance in competition with Goosehead.  (Compl. at ¶¶ 33–38).  As a result, Goosehead terminated its relationship with WIC by notice dated August 20, 2019 in full compliance with the Agreement.  (Compl. at ¶ 43).  Despite that lawful and appropriate termination, Trisha continues to associate herself with Goosehead in violation of Goosehead's rights under Texas common law and the Lanham Act.  (See Compl. at Counts I and II).

## ARGUMENT

I.   **UNDER <u>ATLANTIC MARINE</u>, THE 28 U.S.C. § 1404 PUBLIC INTEREST FACTORS DO NOT WARRANT A TRANSFER OF THIS DISPUTE TO THE EASTERN DISTRICT OF MICHIGAN.**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  This Code provision is "a mechanism for enforcement of forum-selection clauses that point to a

particular federal district."  Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. Texas, 571 U.S. 49, 59 (2013).  Where the parties have agreed on an enforceable forum selection clause, as here, that clause should be given "controlling weight in all but the most exceptional cases."  Id. at 62.  WIC has not put forth any reason to justify deviating from the common enforcement of such clauses. [2]

### A.   The Forum Selection Clause Requires Consideration Of Public Interest Concerns—Private Concerns Are Irrelevant.

Though not cited by WIC, the Supreme Court in Atlantic Marine clarified the analysis that applies to WIC's Motion under § 1404(a), in the context of WIC's contractual assent to an enforceable forum selection clause.  Id. at 62–65.  First, WIC has the burden of proving that the dispute should be transferred.  Id. at 63.  Moreover, the Court should only consider the public-interest factors and not the parties' private interests.  And as the Supreme Court made clear, "these factors will rarely defeat a transfer motion."  Id. at 64.  The Supreme Court held:

> When parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  A court accordingly must deem the private interest factors to weigh entirely in favor of the preselected forum.

Id.

Because the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," and "because the overarching consideration under § 1404(a) is whether a transfer would permit the 'interest of justice,' a valid forum-section clause should be given controlling weight in all but the

---

[2] WIC makes no argument that the Agreement's forum-selection clause is unenforceable other than due to the MFIL. For example, no claim is made that the clause itself is the product of fraud or over-reaching by Goosehead.  See, e.g., Haynsworth v. The Corporation, 121 F.3d 965, 963 (5th Cir. 1997) (identifying the general grounds on which enforcement of a forum-selection clause might be challenged).  Joseph is the only party alleged to have committed fraud.

most exceptional cases." Id. at 62, quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988).

**B. The Public Interest Factors Do Not Outweigh The Interest In Enforcing The Forum Selection Clause.**

WIC's motion suffers from several fatal errors, including its failure to: (i) accurately list the § 1404(a) public interest factors; (ii) provide meaningful analysis of these factors; and (iii) present evidence in support of its transfer motion, whether by reference to pleadings or declarations, apart from *ipse dixit* assertions. (See ECF No. 9-1, "Defendants' Br.", at 11–13)[3].

First, WIC appears to repeat a selection of the private interest factors, under the guise of the public interest factors. (See Defendants' Br. at 12 ("important factors … include the location of the defendant, where the incident giving rise to the cause of action occurred and where the Williams Defendants' pertinent documents and records are maintained")).  More accurately, the public interest factors listed in Atlantic Marine include "the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  See Atlantic Marine, 571 at n. 6, quoting Piper Aircraft Co. v. Reyno, 454 U.S. 241, n. 6 (1981).  None of these factors support a transfer to the Eastern District of Michigan:

- Court congestion.  This factor favors the Northern District of Texas, where the average time to trial in civil actions is under eighteen months.  (Eastburn Decl., at ¶ 3, Ex. 1)  Civil matters in the Eastern District of Michigan, by contrast, proceed to trial in an average time of about twenty-nine months.  (Id.)  Nothing about this dispute suggests

---

[3] All page citations to WIC's Brief in Support of its Motion to Dismiss or Transfer correspond with the in-text brief pagination.

that it would be so lengthy or complicated that it would over-burden this Court's docket.

- Local interest in deciding localized controversies.  Goosehead has a significant presence in this District, with over 500 employees in Texas, nearly 400 of whom are located in Westlake, Texas.  (Langston Decl. at ¶ 2).  Joseph and Trisha traveled to Texas to buy a Goosehead franchise.  (Id. at ¶ 4).  Along with three employees, they began performing under the Agreement at Goosehead's headquarters in Texas.  (Id. at ¶¶ 9, 12).  Goosehead has been injured here, in Texas, by the Defendants' fraud, breach of contract and misuse of its names and marks.  Even the one purported wrongful act alleged by WIC also took place in the Northern District of Texas where, according to WIC, Goosehead issued the notice terminating its relationship with WIC.  (Defendants' Br. at 2).

- Forum at home with the law.  By signing the Agreement, the parties have already consented that any dispute should be governed by Texas law.  As such, the forum most "at home" with the law is right here, in the Northern District of Texas.  And even if one assumed that the Court needed to apply the laws of Michigan, there is no feature of Michigan law so arcane that it is likely to defy the comprehension of this Court.  See Atlantic Marine, 571 U.S. at 68 ("federal judges routinely apply the law of a State other than the State in which they sit").

WIC's failure to provide any evidentiary support for the §1404(a) factors—public or private—is no harmless error.  As the moving party, WIC did not "properly establish relevant venue facts by affidavit, deposition, or otherwise as opposed to making unsupported assertions." See Z-Tel Communications, Inc. v. SBC Communications, Inc., 331 F. Supp.2d 567, 571 (E.D.

Tex. 2004).  See also, QR Spex, Inc. v. Motorola, Inc., 507 F. Supp.2d 650, 664 (E.D. Tex. 2007).

In short, WIC failed to provide any evidence sufficient to override the Agreement's forum

selection clause.  All of the public interest factors indicate that this Court should resolve the parties'

dispute.

### C.  WIC Did Not Present Evidence Relevant To The Private Interest Factors.

Even if the private interest factors were relevant, WIC failed to present any proof that they

warrant transfer to the Eastern District of Michigan.  As with the public interest factors, WIC's

private interest analysis is based exclusively on unsupported assertions. (See Defendants' Br.  at

11–13).  As such, WIC has not met its burden.

The private interest factors include: (i) the relative ease of access to sources of proof; (ii)

availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining

attendance of willing witnesses; (iii) possibility of view of premises, if view would be appropriate

to the action; and (iv) all other practical problems that make trial of a case easy, expeditious and

inexpensive.  Atlantic Marine, 571 at n. 6, quoting Piper Aircraft Co. v. Reyno, 454 U.S. 241, n. 6

(1981).  The established facts indicate that the private interest factors favor this Court:

- Ease of access to sources of proof.  Apart from Joseph and Trisha (who signed the
  Agreement with an unambiguous forum-selection clause), all of the witnesses with
  knowledge of material facts work and live in the Northern District of Texas.  These
  include Matthew Colby, Jonathan Hartgraves, Brad Lorkovic, Marisa Wagner and
  Colleen Melton, among other principals and representatives of Goosehead.  (Langston
  Decl. at ¶ 13).  Likewise, all of the documentation and information relating to the
  relationship between WIC and Goosehead is kept and maintained at Goosehead's
  headquarters in Westlake, Texas.  (Id. at ¶ 14).

- Willing and unwilling witnesses.  In a vague, *ipse dixit* assertion, WIC claims that "persons with knowledge or information regarding the allegations in Goosehead's complaint reside in or around the Eastern District of Michigan."  (Defendants' Br. at 12).  WIC does not identify any individuals, which is even more telling in light of the witnesses listed by Goosehead. Other than Joseph and Trisha, most (if not all) of the witnesses are in Westlake, Texas, where the vast majority of Goosehead's employees are located.  (Langston Decl. at ¶¶ 2, 9).  Furthermore, WIC fails to identify: (i) even a single unwilling witness, much less one who couldn't be compelled to testify in the Northern District of Texas and (ii) any cost associated with the attendance of any willing witness.

- View of premises.  WIC does not suggest that there is any physical premises to be viewed by witnesses or fact-finders in this commercial contract dispute.

- Practical problems.  No such problems are raised by WIC, very likely because no such problems exist.

In sum, WIC has not put forward any facts justifying transfer. On the other hand, Goosehead has provided supported facts indicating that this action should remain in the Northern District of Texas. Based on the record before it, the Court would be hard pressed to find that even a single private interest factor favors transfer to the Eastern District of Michigan.  This Motion should be denied.

### D.  The Michigan Franchise Investment Law ("MFIL") Does Not Override The Supreme Court's Direction In <u>Atlantic Marine</u>.

WIC wrongly argues that the MFIL voids the Agreement's forum selection clause. The MFIL provides that "[a] provision requiring that arbitration or litigation be conducted outside this state" shall be "void and unenforceable."  Mich. Comp. Laws. § 445.1527(f).  However, this

provision is not determinative here. Following the Supreme Court's lead in <u>Atlantic Marine</u>, courts now generally recognize that forum selection clauses are rarely invalidated, even in the face of state statutes that might otherwise call them into question.

At least one District Court, in this District, already recognized that laws like the MFIL do no supersede <u>Atlantic Marine</u>.  In <u>Blue Racer Midstream, LLC v. Kelchner, Inc.</u>, 2018 WL 992781 (N.D. Tex. 2018) [4], Kelchner argued the dispute should be transferred to the Southern District of Ohio despite its having agreed to a Texas forum-selection clause.  Like WIC here, Kelchner claimed that "the forum-selection clause is invalid based on an Ohio statute." <u>See</u> Ohio Rev. Code 4113.62(D)(2).  Even though the Ohio law specifically invalidated forums-selection clauses choosing venue outside Ohio, the District Court nonetheless applied <u>Atlantic Marine</u> and enforced the parties' agreement.  Under <u>Atlantic Marine's</u> public interest factors, the statute was rejected as a basis for transfer.  The Court held. "This case is based on a contract with a bargained-for Texas forum-selection clause and choice-of-law clause entered into by a Texas resident.  Texas has a strong interest in enforcing its residents' transactions and contracts."

Another example is found in <u>Caribbean Restaurants, LLC v. Burger King Corp.</u>, where a Burger King franchise agreement contained an exclusive forum selection clause naming the United States District for the Southern District of Florida.  23 F. Supp. 3d 70, 77 (D.P.R. 2014).  Like WIC here, Burger King's franchisee ignored the clause and sued Burger King in Puerto Rico under its Law 75.  <u>Id</u>.  The franchisee opposed Burger King's motion, on the grounds that Law 75 provides, in part:

> Any stipulation that obligates a dealer to … litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void.

---

[4] All unpublished cases are included in **Exhibit C**, filed contemporaneously herewith.

<u>Id</u>.  The District Court rejected the argument.

Despite Law 75, the court held that federal common law governed the enforceability of forum selection clauses.[5]  <u>Id</u>. at n. 1.  As required by <u>Atlantic Marine</u>, the District Court further held that issues of fraud and overreaching were "the only relevant factors in the determination of the validity of a forum-selection clause." <u>Id</u>. at n. 3.  And the record was "devoid of any allegation or evidence of fraud or overreaching." <u>Id</u>. at 78–79.  Citing <u>Atlantic Marine</u>, the court concluded that "the interest of justice is served by holding parties to their bargain." <u>Id</u>.

The same result was reached by the District Court in <u>Corizon Health, Inc. v. CorrecTek Inc.</u>, 2017 WL 3091456 (D. Idaho 2017). Despite a forum selection clause choosing Kentucky, the plaintiff filed suit in Idaho based upon an Idaho statute reading: "every stipulation or condition in a contract, by which any party is restricted from enforcing his rights under the contract in Idaho tribunals" is "against the public policy of Idaho." <u>Id</u>. at *3.

Even with this seemingly express prohibition, the District Court held that the overriding principle of <u>Atlantic Marine</u> guides § 1404(a) transfer analysis.  First, the District Court noted that "<u>Atlantic Marine</u> directs the Court to place controlling weight on the forum selection clause." <u>Id</u>. (citations omitted).  It further held that "<u>Atlantic Marine</u> altered the burden of proof" such that "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum where the parties agreed." <u>Id</u>. at *4. The <u>Corizon</u> plaintiff failed to raise any circumstances that warranted invalidating the forum selection clause; instead, it relied exclusively on the prohibitory

---

[5] Binding law from the Sixth Circuit (where the Eastern District of Michigan resides) recognizes that federal—not Michigan—law governs the enforceability of forum selection clauses in diversity actions. <u>Wong v. PartyGaming Ltd.</u>, 589 F.3d 821, 826 (6th Cir. 2009). Faced with a divergence between state and federal policy, the <u>Wong</u> court determined that federal law controls in matters of federal procedure, which includes the enforceability of a forum selection clause. <u>Id</u>. at 827–828. Despite a seemingly prohibitory Ohio policy, the <u>Wong</u> court enforced the forum selection clause. <u>Id</u>. at 827–834.

state statute.  Id. at *5.  While considered, the District Court flatly rejected that the Idaho statute

voided the forum selection clause:

> If Idaho Code § 29–110(1) was determinative, striking down the forum selection
> clause would be routine rather than extraordinary, standing Atlantic Marine on its
> head. Hence, [plaintiff] must point to something more than just the statute itself to
> warrant ignoring the forum selection clause."

Id.

Even courts in the Eastern District of Michigan—the forum desired by WIC—have

likewise refused to invalidate forum selection clauses where the sole basis is a prohibitory statute.

See Kessler v. Direct Consulting Assocs. LLC, No. 17-11943, 2018 WL 7890862 (E.D. Mich.

2018).  Kessler involved claims brought under Title VII, which contains a "special venue

provision" that is "designed to prevent national companies with distant offices from seeking to

discourage claims by forcing plaintiffs to litigate far from their homes." Id. at *6. Despite this

provision, the District Court in Kessler refused to invalidate a forum selection clause based on

public policy, in light of Atlantic Marine:

> As a threshold matter, it seems difficult to reconcile the Supreme Court's recent
> decision in Atlantic Marine with the across-the-board rule that Plaintiff seemingly
> advocates here -- i.e., that forum selection clauses are unenforceable in all Title VII
> suits as incompatible with the public policy concerns reflected in the statute's venue
> provision. The Court emphasized in Atlantic Marine that 'courts should not
> unnecessarily disrupt the parties' 'settled expectations' as embodied in a forum
> selection clause, and that 'forum selection clauses should control except in unusual
> cases.' A flat refusal to enforce forum selection clauses in all Title VII actions
> would not be confined to 'unusual cases.' It follows, then, that the impact of Title
> VII's venue provision on the enforceability of a forum selection clause should be
> evaluated on a case-by case basis.

Id. at *7.

WIC, by contrast, cites cases that are either clearly distinguishable or are otherwise

irrelevant.  No relief is provided to WIC in the primary decision it cites, Live Cryo, LLC v.

CryoUSA Import & Sales, LLC, 2017 WL 4098853 (E.D. Mich. 2017).  While the court did not

enforce a forum-selection clause, the holding was based on an overly-narrow argument by the franchisor-defendant, based on a choice of law clause: that "plaintiff is not a franchisee and Texas law controls." <u>Id</u>. at \*7.  The franchisor, and the District Court for that matter, did not address <u>Atlantic Marine</u> and the strong federal policy favoring near-universal enforcement of forum selection clauses. <u>Id</u>.  The only other decision cited by WIC, <u>Buist v. Digital Message Systems Corp.</u>, is an unpublished state court case, not governed by federal law.  2002 WL 31957703 (Mich. App. 2002).  Furthermore, <u>Buist</u> was decided over a decade prior to <u>Atlantic Marine</u>.[6]  <u>Id</u>.

## II.   THE FIRST-TO-FILE RULE DOES NOT OVERRIDE THE AGREEMENT'S FORUM SELECTION CLAUSE.

WIC seems to suggest that, by racing to the courthouse in Michigan, it should be excused from the Agreement's mandatory and unambiguous forum selection clause.  That is certainly not the law, and the Court should not reward WIC for the extraordinary measures it has taken in attempting to escape plain and straightforward contractual obligations.

The District Court may have said it best in <u>Universal Operations Risk Management, LLC v. Global Rescue LLC</u>, 2012 WL 2792444 at \*5 (N.D. Cal. 2012):

> While [WIC] contend[s] that the first-to-file rule controls, they have failed to cite authority supporting the proposition that a party may defeat an otherwise valid and enforceable mandatory forum selection clause by invoking the first-to-file rule. Nor has the court located any authority holding that the first-to-file rule is a proper basis to set aside a valid forum selection clause containing mandatory language.

Likewise here, WIC has provided no authority suggesting that the first-to-file rule can invalidate the Agreement's forum selection clause.  The parties in <u>Cadle Co. v. Whataburger of Alice, Inc.</u>,

---

[6] WIC may cite two other decisions in its Reply.  Both are not relevant.  In <u>Martino v. Cottman Transmission Sys., Inc.</u>, 218 Mich. App. 54 (1996), a Michigan state court issued its decision a decade prior to <u>Atlantic Marine</u>.  The dispute did not involve a forum selection clause and the issue was not resolved under federal common law.  In <u>Family Wireless #1, LLC v. Automotive Technologies, Inc.</u>, 2015 WL 5142350 (E.D. 2015), the parties <u>stipulated</u> that the forum-selection clause in that dispute was not enforceable.  <u>Id</u>. at \*2.  Even so, the court granted the franchisor's request to transfer the dispute to the forum identified in the parties' franchise agreement. <u>Id</u>. at \*8.

174 F.3d 599, 601 (5th Cir. 1999) did not have, as here, an agreed-upon forum selection clause that is both mandatory and unambiguous.  See generally id.  In fact, they were not even contracting partners.  Id.  Nor was any forum selection clause in play in Fargo Bank, N.A. v. West Coast Life Insurance Co., 631 F. Supp.2d 844 (N.D. Tex. 2009).

This Court should not permit the first-to-file doctrine to re-write the parties' Agreement. If this Texas forum-selection clause could be voided, simply by WIC filing first elsewhere, "it would encourage parties to rush to the courthouse to file lawsuits for the purpose of circumventing their agreed-upon promises."  Universal Operations at *6.  It would likewise reward WIC for "forum shopping" and "contravene controlling authority requiring the enforcement of a valid mandatory forum selection clause, absent a showing that the clause is unreasonable or unjust, or is invalid for such reasons as fraud or over-reaching."  Id.

Notably, Universal Operations catalogs several other District Court decisions that have disagreed with the very argument raised here by WIC: an argument plainly not cognizable under Atlantic Marine.  Universal Operations at *5; see, e.g., Automated Solutions, Inc. v. Fadal Machining Centers, LLC, 2011 WL 2182457, at *5 (D. Idaho 2011) ("Although Plaintiffs were the first to file, the Court finds that should not defeat an otherwise valid and enforceable forum selection clause which Plaintiffs have not shown to be unreasonable nor does the Court find it to be."); Megadance USA Corp. v. Knipp, 623 F.Supp.2d 146, 149 (D. Mass 2009) ("It is improper for a party to invoke the first filed doctrine in the face of a clearly articulated forum selection clause in a contract.").

### III.    THE FORUM-SELECTION CLAUSE PROPERLY ESTABLISHES VENUE UNDER 28 U.S.C. § 1391.

"The court need only look to the valid forum selection clause … to conclude that venue is proper in this court."  Auto Wax Co., Inc. v. Weaver, 1998 WL 892312 at *2 (N.D. Tex. 1998).

-15-

See also, Hunt v. Bankers Trust Co., 799 F.2d 1060, 1068 (5th Cir, 1986) ("Venue is a privilege to a litigant, and, even when venue is laid in a court where it would otherwise be improper, it may be waived by express agreement or by conduct.").

In addition to the Agreement's forum-selection clause, WIC explicitly and expressly waived any right to challenge venue: "[t]he parties hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision."  (Agreement at ¶ 27.2.2). As the Fifth Circuit has held, "A party may waive its rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue, or by establishing an exclusive venue within the contract."  City of New Orleans v. Municipal Administrative Services, Inc., 376 F.3d 501, 504 (5th Cir. 2004).

Venue would nonetheless exist even in the absence of the forum-selection clause.  Pursuant to 28 U.S.C. § 1391(b)(2), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  The bar for substantiality is low; that is, the Northern District of Texas need not be the place where most "relevant events took place," only a "substantial part" of the events.  See Zurich American Ins. CO. v. Tejas Concrete & Materials Inc., 982 F. Supp.2d 714, 722 (W.D. Tex. 2013).  Venue is often proper in more than one District, and this District, selected by Goosehead, "must simply have a substantial connection to the claim."  Id., citation omitted.

The connections between Texas and the claims alleged by Goosehead are undeniable.  WIC's owners, Joseph and Trisha, traveled to Texas before and after signing their Agreement containing its forum, venue, jurisdiction and choice of law clauses naming Texas.  (Langston Decl. at ¶¶ 4–5, 9–12).  Joseph fraudulently induced Goosehead into offering the Agreement to WIC, during the time he was actually at Goosehead's Texas office.  (Id. at ¶ 7).  Joseph, Trisha and their

-16-

team all initiated the performance of the Agreement's obligations in Texas, including selling thirty insurance policies while in Texas.  (Id. at ¶ 12). These facts are more than sufficient to establish that a substantial part of the events giving rise to this action occurred in this District, especially considering that the parties' brief franchise relationship lasted just over a year.  (Compl. at ¶ 43).

## IV.   WIC WAIVED ANY CHALLENGE TO PERSONAL JURISDICTION IN THIS DISTRICT.

Personal jurisdiction is a right that may be waived, and WIC did just that by virtue of entering into the Agreement with Goosehead.  More particularly, WIC stipulated that all disputes "must be brought only within the state and judicial district" where Goosehead maintains its Texas headquarters and, to remove any possible doubt, WIC waived "all questions of personal jurisdiction." (Agreement at ¶¶ 27.2 & 27.2.2).

The United States Supreme Court held that a Michigan franchisee can waive personal jurisdiction when entering into an agreement with its franchisor, where that agreement contains a forum-selection clause.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).  The Supreme Court in Burger King held that "because the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arguments' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'"  Id. at n. 14, quoting Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982).  In the commercial context, as here with WIC and Goosehead, "parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction."  Id.

Even if WIC did not waive personal jurisdiction, it otherwise plainly exists with respect to all Defendants.  Texas has a broad long-arm statute, triggered here as it permits the exercise of jurisdiction over any nonresident that "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state."  V.T.C.A. § 17.042(2).  The

-17-

statute extends to the limits of due process.  See Mink v. AAAA Development, LLC, 190 F.3d 333, 335 (5th Cir. 1999).  Fourteenth Amendment due process concerns are satisfied where, as here, a "franchise dispute grew directly out of 'a contract which had a substantial connection with that State." Burger King, 471 U.S. at 479, quoting McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957.  Like the franchisee in Burger King, Joseph and Trisha "'reach[ed] out beyond' Michigan and negotiated with [Goosehead] for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." Id., quoting Travelers Health Association v. Virginia, 339 U.S. 643, 647 (1950).  Once approved by Goosehead, WIC "entered into a carefully structured [10]-year relationship that envisioned continuing and wide-reaching contacts with [Goosehead] in [Texas]." Id.

Apart from the plain and mandatory forum-selection clause, none of these Defendants could possibly claim surprise at being required to defend themselves in Texas.  Joseph and Trisha both traveled to Texas specifically to meet with Goosehead to become franchisees.  (Langston Decl. at ¶ 4).  They trained for two weeks, in Texas, with three other WIC employees to meet the requirements of the Agreement with Goosehead.  (Id. at ¶ 9).  As such, both were physically present in Texas both prior to and following their execution of the Agreement containing its Texas forum-selection clause, its Texas choice of law clause and its wavier of the right to challenge personal jurisdiction.  Moreover, Joseph and Trisha actually began performing the Agreement's obligations and sold thirty insurance policies, on behalf of WIC, while they were physically located within Texas.  (Id. at ¶ 12).  All of these facts, which were omitted from Defendants' motion clearly prove that any concerns with respect to the Due Process Clause are satisfied.

**V.    THE AGREEMENT'S CHOICE OF LAW CLAUSE PROVIDES NO BASIS FOR THE COURT TO DISMISS OR TRANSFER THIS DISPUTE.**

### A.  Only The Forum-Selection Clause—Not The Choice Of Law Clause—Provides A Basis For The Court to Dismiss Or Transfer This Matter.

Finally, WIC makes an unusual and irrelevant argument with respect to the Agreement's choice of law clause.  Specifically, WIC seems to imply (without clearly arguing) that it may be entitled to relief in the pending Motion because the Agreement's Texas choice of law clause should not be enforced as written.  Whether the choice of law clause is enforceable has no bearing on whether this case should be dismissed or transferred.  Granting or denying the pending motion turns solely on the Court's treatment of the forum selection clause.  If the Court enforces the forum-selection clause, as Goosehead requests, the Court should deny the pending Motion.  The Court may decide at a later time whether to apply the laws of Texas or Michigan to the parties' claims and defenses.

### B.  The Parties' Choice Of Law Clause Excludes Conflict Of Laws Principles.

If the Court nonetheless decides to evaluate the choice of law clause now, its analysis should be far more limited than requested by WIC.  This conclusion follows from an undeniable fact: not only does the Agreement provide that Texas law ought to apply, but also that it apply without regard to local choice of law rules.  (<u>See</u> Agreement at ¶ 27.1).  The clause reads, in pertinent part:

> This Agreement will be interpreted and construed exclusively under the laws of the State of Texas, which laws will prevail in the event of any conflict of law (without regard to, and without giving effect to, the application of Texas choice-of-law rules).

(<u>Id</u>.)

-19-

This provision clearly indicates that the parties have contractually stipulated that this Court need not consider the elements of the Restatement sections cited by WIC.[7] (See Defendants' Br. at 4–5). Therefore, the Court should apply the mandatory clause and determine that Texas law governs this dispute. See Western-Southern Life Assurances Co. v. Kaleh, 193 F. Supp.3d 756, n. 132 (S.D. Tex. 2016) ("The Court notes it interprets the phrase 'without regard to conflicts of laws principles' in the choice-of-law clause … to mean that Ohio law should govern the action regardless of whether under Ohio's conflict of laws principles Ohio would apply its law to the action").

**C. The Choice Of Law Clause Passes Muster Under The Traditional Texas Conflict Of Law Rules.**

"In Texas, contractual choice-of-law provisions are typically enforced." Smith v. EMC Corp., 393 F.3d 590, 597 (5th Cir. 2004). If the Court determines that it should address the choice of law clause at all—and thereafter that it should consider conflict of law rules—then it should find that WIC has failed to overcome this presumption of enforceability.

Texas courts evaluate choice of law clauses pursuant to the standard set forth in Section 187(2) of the Restatement (Second) of Conflict of Laws. See Huawei Technologies Co., Ltd. v. Yiren Huang, 2019 WL 1978339 (E.D. Tex. 2019). The Agreement's choice of law clause should be enforced by the Court unless WIC proves either: (i) Texas has no substantial relationship to the parties or their franchise relationship, and there is no other reasonable basis for the parties' choice; or (ii) application of Texas law would be contrary to a fundamental policy of a state with a

---

[7] WIC does not suggest that the choice of law clause (or the Agreement) should be unenforceable as a matter of contract common law. That is, WIC does not assert that the clause was the product of fraud or duress, the subject of any over-reaching by Goosehead, lacking in consideration, or is in any way vague or ambiguous.

materially greater interest than Texas, and that same state's law would apply in the absence of the Agreement's clause.  Id.at *4, quoting Restatement § 187(2).

The first step is easily satisfied because Goosehead's headquarters are now, and always have been, located in Texas.  Id. at *5.  See also, Cardoni v. Prosperity Bank, 805 F.3d 573, 581 (5th Cir. 2015) (defendants were headquartered in Texas providing a reasonable basis for the parties to agree that Texas law would govern any dispute); and McKissock, LLC v. Martin, 267 F. Supp.3d 841, 850 (W.D. Tex. 2016) (parties had a reasonable basis for selecting Pennsylvania law, where the party arguing for enforcement of the clause formerly maintained its headquarters in the same state).

With respect to the second step, WIC's analysis improperly conflates the Agreement's choice of law clause with the forum-selection clause.  Focusing on the choice of law clause, there is no public policy concern arising from the MFIL which would require this Court to select Michigan law despite the parties' decision to accept the laws of Texas.  See Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 360 (6th Cir. 1993) ("The [MFIL] does not expressly void choice of law provisions, and we decline to imply such a prohibition.")[8]

The primary decision cited by WIC is clearly distinguishable.  (See Defendants' Br. at 5). In ECL Group v. Mass, an individual entered into an employment agreement with ECL Group selecting Texas law.  2018 WL 949235 at *5 (N.D. Tex. 2018).  However, Texas did not have a meaningful relationship with either party.  Id. at *6. That is, the individual worked in California and ECL Group, though maintaining a presence in Texas, operated its national headquarters from

---

[8] In addition to addressing choice-of-law provisions, the Banek court referred to the enforceability of forum selection clauses under the MFIL. However, these passing remarks are not controlling for two reasons. First, the court did not analyze a forum selection clause—only a choice-of-law clause was at issue. Second, these remarks are likely not controlling because the case was decided in 1993, twenty years before the US. Supreme Court's decision in Atlantic Marine.

North Carolina.  Id.  This was a pivotal fact in the Court's decision to void the choice-of-law clause.  Id. at *6–8.  It noted that, while Texas had a strong "interest in protecting freedom and uniformity of contract," ECL was not headquartered in Texas.  Id. at *7.

This dispute is very different from ECL Group.  Goosehead's sole company headquarters have always been located in Texas.  (Langston Decl. at ¶ 4).  Joseph and Trisha traveled to Texas to learn about Goosehead and convince Goosehead to offer them a franchised business.  (Id. at ¶¶ 4–5; 9–12).  After signing the Agreement, with its choice of law clause, they brought their team to Texas for nearly two weeks where they began operating their new franchise.  (Id. at ¶ 9–12).  Less there be any doubt about the significance of the Williamses' time in Texas, one need only read Joseph's own words, as communicated via e-mail to Goosehead immediately following his Texas training:

> The last two weeks were really enlightening.  Your depth of knowledge about the industry and building the company are really impressive.  Your intelligent processes and strategic approach are completely congruent with how I run my business.  When I realized this, the training really gave me back the hope and the motivation that I had lost as a captive agent.

(Id. at ¶ 15 & Ex. A).

Texas also has a materially greater interest in the outcome of this dispute. While Joseph and Trisha are located in Texas, Goosehead employs over 500 people in Texas, nearly 400 of whom are located in this District.  (Langston Decl. at ¶ 2). WIC's actions, particularly the threat of unfair competition, presently injure Goosehead in Texas. (Compl. at Counts III–VII).  Both WIC and Trisha continue to unlawfully associate with Goosehead names and marks, further damaging Goosehead's name and goodwill. (Id. at Counts I & II). These are in violation of Goosehead's Texas common law trademark rights as well as the Lanham Act.  (Id.) Reading WIC's Brief, there is a risk of erroneously concluding that the Defendants have suffered harm here when,

in fact, as the Complaint makes clear, Goosehead is the Plaintiff and is pursuing substantial claims for relief.

**CONCLUSION**

For the foregoing reasons, the Court should deny WIC's motion to dismiss.  It should likewise deny the alternative request to transfer this action to the United States District Court for the Eastern District of Michigan.

Dated January 20, 2020.

*/s/ Marc F. Kirkland*
Marc F. Kirkland
Texas Bar No. 24046221
mkirkland@qslwm.com
Kristin Marker
Texas Bar No. 24098036
kmarker@qslwm.com
**Quilling, Selander, Lownds, Winslett & Moser, P.C.**
6900 Dallas Parkway, Suite 800
Plano, Texas 75024
Telephone: (214) 560-5444
Facsimile: (214) 871-2111


Daniel M. Janssen (*admitted pro hac vice*)
daniel.janssen@quarles.com
Zachary T Eastburn (*admitted pro hac vice*)
zachary.eastburn@quarles.com
Lauren N. Zenk (*admitted pro hac vice*)
lauren.zenk@quarles.com
**Quarles & Brady LLP**
411 E. Wisconsin Ave.
Suite 2350
Milwaukee, WI 53202
Telephone: (414) 277-5000
Facsimile: (414) 271-3552

Attorneys for Plaintiff
Goosehead Insurance Agency, LLC