IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| GOOSEHEAD INSURANCE AGENCY, LLC<br><br>*Plaintiff/Counter-Defendant*,<br><br>v.<br><br>WILLIAMS INSURANCE AND CONSULTING, INC., TRISHA M. WILLIAMS, and JOSEPH N. WILLIAMS,<br><br>*Defendants/Counter-Plaintiffs.* | §§§§§§§§§§§§<br><br>CASE NO. 4:19-cv-01040 |

**DEFENDANTS/COUNTER-PLAINTIFFS WILLIAMS
INSURANCE AND CONSULTING, INC.,
TRISHA M. WILLIAMS AND JOSEPH N. WILLIAMS SUPPLEMENTAL
RESPONSE IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION
TO DISMISS COUNTS I, III, IV AND V OF DEFENDANTS' FIRST AMENDED
COUNTERCLAIM AND TO APPLY TEXAS LAW TO COUNTS II AND IV**

### *Introduction*

Defendants/Counter-Plaintiffs Williams Insurance and Consulting, Inc., Trisha M. Williams and Joseph N. Williams (collectively, the "Williams Defendants"), through their counsel, submit this supplemental response brief setting forth an explanation as to why Chapter 271 of the Texas Business and Commerce Code does not apply to this dispute.

Goosehead's Supplemental Submission (ECF No. 52), which claims that Chapter 271 does apply, is entirely misleading. It ignores the plain language of the Franchise Agreement, the statute and case law and instead, is replete with speculation and relies on such immaterial speculation in an effort to disingenuously cast the Franchise Agreement as a "qualified transaction" – yet another attempt to evade the protections afforded to Michigan residents under the Michigan Franchise Investment Law.

1

*The Franchise Agreement is Not a "Qualified Transaction"*
*Under Chapter 271 of the Texas Business and Commerce Code*

Chapter 271 of the Texas Business and Commerce Code sets forth provisions applicable to certain types of transactions and the parties' ability to choose the law applicable to those transactions. However, it does not apply to this dispute unless the Franchise Agreement (Ex. A to the Complaint) between Plaintiff Goosehead Insurance Agency, LLC ("Goosehead") and the Williams Defendants is a "qualified transaction"—and it is not.

A "qualified transaction" means a transaction under which a party:

(1) ***Pays or receives, or is obligated to pay or is entitled to receive***, consideration with an aggregate value of at least $1 million; or

(2) Lends, advances, borrows, or receives, or is obligated to lend or advance or is entitled to borrow or receive, money or credit with an aggregate value of at least $1 million.

Tex. Bus. & Com. Code § 271.001 (emphasis added).

Quite simply, the Franchise Agreement does not obligate the Williams Defendants to pay to Goosehead an amount of at least $1 million over the term of the Franchise Agreement. Not surprisingly, Goosehead's Supplemental Brief (ECF No. 52) does not reference anywhere in the Franchise Agreement where such an obligation is set forth because it does not exist.[1]

Instead, over the duration of the Franchise Agreement, which was for a 10 year period, the Williams Defendants were obligated to pay to Goosehead approximately ***$134,200.00***—well below $1 million. This amount consists of the mandatory $25,000.00 franchise fee payable to

---

[1] Also, not surprisingly, Goosehead did not claim in its motion papers that Chapter 271 was applicable to this dispute. Indeed, rather than appropriately acknowledge in its Supplemental Brief that Chapter 271 does not apply, Goosehead attempts to fit a square peg into a round hole by ignoring the simply reality that regardless of whatever the Williams Defendants potentially might have earned, the Franchise Agreement simply does not obligate the Williams Defendants to pay Goosehead over $1 million.

Goosehead and monthly minimum royalty payments of approximately $109,200.00 over the ten year period. Ex. A at 4.1 and 4.2. Of course, Goosehead terminated the Franchise Agreement well before its ten year term and notably, Goosehead has not, and cannot, present any evidence that the amount actually paid before it was terminated was anywhere close to $1 million.[2]

Chapter 271 does not use the words "may" or "possibly will" receive when defining the applicability of the provision and speculation as to the gross revenue the Williams Defendants might have earned (a percentage of which Goosehead was entitled to) is simply not relevant. Speculation does not create an obligation (the term used in the statute) to pay.[3] Goosehead relies on possible gross revenue in a spurious attempt to turn the Franchise Agreement into a "qualified transaction" but this fails. It plainly does not matter what the Franchise Disclosure Document projects the average gross revenue is for a Goosehead franchisee—the disclosure document is not an agreement between Goosehead and the Williams Defendant. The projected gross revenue for Williams Insurance at a particular point in time is also of no consequence. The only relevant consideration in determining whether the Franchise Agreement is a "qualified transaction" under Texas Business and Commerce Code is what the Williams Defendants were "obligated" to pay and what Goosehead was entitled to receive.

Moreover, Goosehead's Supplemental Submission refers to Goosehead's 2020 Franchise Disclosure Document, which the Williams Defendants did not receive. Rather, the Williams

---

[2] To the extent that the Court wishes to address this issue further, the Williams Defendants suggest that discovery could be had on the amount required to be paid under the Franchise Agreement and the amount actually paid on the Franchise Agreement prior to its termination.

[3] The degree of such speculation is emphasized by such recent unexpected developments as a historical change in the Michigan automobile insurance law, which is expected to lower the price of policies, and the COVID-19 pandemic, which has impacted the industry. It should also be noted that in its Complaint Goosehead questions the Williams Defendants competence, but now claims that they would have met or exceeded any projections for gross revenue.

Defendants received the 2017 Franchise Disclosure Document (Ex. 1, excerpt of FDD), which reaffirms Goosehead's complete speculation in the amount the Williams Defendants might have generated. The 2017 Franchise Disclosure Document explicitly states: "We cannot estimate or predict the results that you will experience as a franchise." Ex. 1 at 41.

Further, if Goosehead truly believed an obligation existed for the Williams Defendants to pay it over $1 million under the Franchise Agreement, it would have brought a claim against Williams Insurance for its failure to pay in excess of $1 million pursuant to the Franchise Agreement. Tellingly, it did not.

Notably, Goosehead has failed to cite a single case in support of its baseless assertion that the Franchise Agreement is a qualified transaction because it cannot. Indeed, the cases within the Fifth Circuit in which a court has addressed on the enforceability of a choice-of-law provision under Tex. Bus. & Com. Code § 271.001 each involve an agreement pursuant to which one party was obligated, ***by the terms of the agreement***, to pay to the other party a specific sum of at least $1 million. *See e.g. Cantu v. Jackson Nat. Life Ins. Co.*, 579 F.3d 434, 437-38 (5th Cir. 2009) (finding that two insurance policies for $500,000 each, which were entered into contemporaneously between the same parties, should be aggregated and constituted a qualified transaction where they totaled $1 million); *In re Perry*, 425 B.R. 323, 390 (S.D. Tex. 2010) (promissory note at issue was a qualified transaction because more than $1 million had been loaned); *Kevin Ehringer Enterprises Inc. v. McData Services Corp.*, 3:06-CV-812, 2006 WL 3531417, at *1 (N.D. Tex. Nov. 27, 2006) (Lindsay, J.) (agreement at issue required the payment of at least $1 million in royalties within three years); *International Transactions Ltd. v. Embotelladora Agral Regiomontana S.A.*, 3:01-CV-1140, 2006 WL 2217478 (N.D. Tex. Aug. 3,

2006) (promissory note at issue was for an amount in excess of $1 million dollars). Further, none of these cases involve a franchise relationship.

The Franchise Agreement is not a "qualified transaction" under Tex. Bus. & Com. Code § 271.001 because under the terms of the Franchise Agreement, the Williams Defendants were only obligated to pay to Goosehead approximately $134,200.00. Because the Franchise Agreement is not a "qualified transaction" under Chapter 271 of the Texas Business and Commerce Code does not apply and thus, the Court must apply the Restatement test, as set forth below and in the Williams Defendants' Response to Opposition to Goosehead's Motion (ECF No. 46). *Cantu*, 579 F.3d at 437-38 ("If [the Franchise Agreement is not a 'qualified transaction'], our analysis is governed by the restatement").

### *Because the Franchise Agreement is Not a "Qualified Transaction" the Restatement Applies*

As Goosehead acknowledges, under the Restatement (Second) of Conflict of Laws test, though the Franchise Agreement has a Texas choice-of-law provision, Texas courts will not apply Texas law if another state (i.e. Michigan) (1) has a more significant relationship with the parties and the transaction than Texas; (2) has a materially greater interest than Texas in the enforceability of a given provision; and (3) has a fundamental policy that would be contravened by the application of Texas law to the dispute. *See ECL Grp., LLC v. Mass.*, No. 3:17-CV-2399, 2018 WL 949235, at *6 (N.D. Tex. Feb. 20, 2018).

The Williams Defendants easily meet each of the factors of this test—a point that Goosehead does not even attempt to meaningfully dispute in its Supplemental Submission. Specifically, as set forth in detail in the Williams Defendants' Opposition (ECF No. 46 at 9-10), the Williams Defendants are residents of Michigan, negotiated and signed the Franchise Agreement in Michigan and operated the franchise in Michigan. Further, as Goosehead knows,

5

Michigan has a fundamental public policy to protect its residents that become franchisees evidenced through its adoption of the Michigan Franchise Investment Law—similar protections simply do not exist under Texas law. Thus, application of Texas law would contravene and offend Michigan's public policy, and under the Restatement, Michigan law should apply to each count of the Amended Counterclaim.

## *Conclusion*

For the reasons set forth above, the Williams Defendants respectfully submit that the Franchise Agreement is not a "qualified transaction" and thus, Chapter 271 of the Texas Business and Commerce Code does not apply. Further, the Williams Defendants respectfully request that this Court deny Goosehead's Motion to Dismiss Counts I, III, IV and V of the Amended Counterclaim and to Apply Texas Law to Counts II and VI in its entirety, and for such other and further relief as this Court deems proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  August 27, 2020 | /s/ Mark Kowalsky<br>Daniel D. McGuire<br>State Bar No. 24081282<br>POLSINELLI PC<br>2950 N. Harwood, Suite 2100<br>Dallas, Texas 75201<br>Telephone: (214) 397-0030<br>Facsimile:  (214) 397-0033<br>dmcguire@polsinelli.com<br>and<br>David L. Steinberg (*pro hac vice)*<br>Mark Kowalsky (*pro hac vice*)<br>Katherine Stefanou (*pro hac vice*)<br>JAFFE RAITT HEUER & WEISS, P.C.<br>27777 Franklin Road, Suite 2500<br>Southfield, Michigan 48034<br>dsteinberg@jaffelaw.com<br>mkowalsky@jaffelaw.com<br>kstefanou@jaffelaw.com<br>*Counsel for Counter-Plaintiffs* |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of August, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system which will send notice of the electronic filing to all counsel of record.

/s/ Mark Kowalsky